**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GOLDENTREE ASSET MANAGEMENT L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | Case No.: 1:13-cv-00435 |
| v. | ) ) | Judge: Hon. John J. Tharp, Jr. |
| BNP PARIBAS S.A.; SCHMOLZ + BICKENBACH LUXEMBOURG S.A.; SCHMOLZ + BICKENBACH AG., | ) ) ) ) ) ) | Magistrate: Hon. Jeffrey Cole |
| Defendants. | ) | |

**DECLARATION OF SASCHA KUHN IN SUPPORT OF GOLDENTREE ASSET**
**MANAGEMENT LP'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I, SASCHA KUHN, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as

follows:

1.     I received my law degree in 2000 from the University of Cologne after passing the first

state exam in February 2000.  Following my practical training (Referendariat) I passed my

second state exam in May 2004 and have been licensed as a lawyer to practice law in the Federal

Republic of Germany in August 2004 as evidenced by the attached excerpt from the Official

Register of Lawyers which is kept by the German Federal Bar. I am a disputes partner of the firm

of Simmons & Simmons.

2.     In the course of my legal practice I have become thoroughly familiar with German civil

and criminal law (including, but not limited to, the law on contracts, tort and civil liability for

criminal offences) as well as civil procedure.

1

3.     The statements made herein are based on my personal knowledge of the laws of the Federal Republic of Germany and my practical experience as a legal practitioner. Where I have relied upon information from others I have specified the source of the information and believe it to be true.

4.     I have been asked to make statements about the speed at which civil proceedings in German courts proceed, the availability of discovery procedures in Germany, and to respond to certain assertions included in the Declaration of Prof. Dr. Hans Christoph Grigoleit ("Grigoleit") dated March 22, 2013 (the "Grigoleit Aff.")

## Judicial Administration In Germany

5.     Information on the average length of civil proceedings in Germany can be found in a publication named "Selected figures on the administration of justice" ("Ausgewählte Zahlen für die Rechtspflege"), which is published by the Federal Statistical Office (Statistisches Bundesamt) and which Mr. Grigoleit refers to.  The statistics provided by Mr Grigoleit in his affidavit are technically correct;  however, his conclusions about the average duration of cases in German courts do not accurately reflect or predict how long it might take for this specific matter to be resolved in a German forum.

6.     To begin with, the statistics do not contain any information on the specifics of proceedings in which at least one of the parties involved is not a company or an individual resident in Germany.  In practice, based on my years of experience in front of German courts and handling cases with international parties, such proceedings often are more complicated and lengthier than proceedings into which only parties resident in Germany are involved.

2

7.     Further, Grigoleit cites statistics concerning Local Courts (Amtsgericht) that have no relevance to this matter because Local Courts have jurisdiction only over cases where the amount in dispute is less than EUR 5,000.00. As I understand it, damages in this case are in the millions of dollars, so it could not be brought in the German Local Court (see Section 23 of the German Courts Constitutions Act (Gerichtsverfassungsgesetz)) and statistics about the length of time it takes to resolve cases in Local courts – which are the quickest to resolve – are not applicable. The case could be brought in the District Courts (*Landgerichte*, which are sometimes also translated as Regional Courts), which, as Grigoleit concedes, have longer average case durations.

8.     Furthermore, the statistics attached to Mr Grigoleit's affidavit refer to the average duration of all cases initiated in the District/Regional Courts, whether resolved by judgment, settlement or abandonment of the action by the plaintiff. The extreme brevity of certain proceedings commenced but then abandoned or settled skews the statistics he cites, which do not reflect the average duration of a case that is litigated through judgment.

9.     In addition, the statistics published by the Federal Statistical Office (Statistisches Bundesamt) as attached to Mr Grigoleit's affidavit only provide information on the percentage of proceedings which have been resolved within specific time frames. In other words: the statistics provide information on what percent of all cases heard before, for example District Courts, are resolved within a specific time frame, for example within six months.

10.     The statistics do not, however, provide information on the median (this is the reason for which Mr. Grigoleit refers to the arithmetic mean, not the median, in his affidavit). The median is the numerical value which separates the top 50% of a data sample from the bottom 50% of a data sample. It is therefore the value that describes the typical value, such as for example, the

3

typical length of civil proceedings. This median is not contained in the statistics which are published as "Selected figures on the administration of justice" ("Ausgewählte Zahlen für die Rechtspflege"). Because the statistics used by Mr. Grigoleit do not accurately reflect the median duration of cases in German courts, they are not a true measure of the typical time in which a case is resolved.

11.     Taking into account all these aspects I am of the view that the statistics published by the Federal Statistical Office have only limited relevance for to this case and should not be relied upon as a predictor of how long it would take for this specific case to be resolved in Germany.

**Lack Of Discovery In German Courts**

12.     As far as discovery is concerned, it can be said that in Germany this legal concept only exists in a very limited way, which is not comparable to American style discovery.

13.     The general rule is that a party can only use documents that it already has in its possession; discovery is the exception to this rule. It is rare that discovery procedures, under Section 142 of the German Code of Civil Procedure (Zivilprozessordnung) (the text of the German law provisions cited herein are attached as Exhibit A), are even invoked in civil cases, with the exception of family court proceedings.

14.     In the rare case that discovery is employed, parties to German civil litigation are entitled to document disclosure only if they can first identify the specific document they are seeking. That a litigant must first identify the specific document they are seeking before they are entitled to it often surprises American attorneys. But this rule against open-ended discovery is firmly entrenched in German procedure. In the context of the reform of this legal provision in 2001 it

4

was made clear in the Committee on Legal Affairs (Rechtsausschuss) of the German Parliament (Deutscher Bundestag) that the reform of section 142 of the German Code of Civil Procedure should not lead to the introduction of US-American style discovery proceedings.

15.     Therefore, in order to receive an opposing party's email communication, the requestor would need to identify the exact email they were looking for. Where a party only generically refers to correspondence between certain persons, it is unlikely that would be sufficiently precise for a German court to grant discovery. In this context, German courts are usually opposed to any kind of attempts to search for documentary evidence and the hurdles for the identification of and reference to documents are therefore quite high.

16.     Finally, it is worth noting that under section 142 of the German Code of Civil Procedure, the court is under no legal obligation to direct a party to produce documents. The decision is entirely up to the discretion of the Judge and from my practical experience, judges are often very reluctant to issue an order under section 142 of the German Code of Civil Procedure. I therefore regard it as unlikely that a German Court would issue such order in the case at hand.

17.     In addition to this, it should be noted that where such documents might be abroad, for example in Switzerland, France, or the United Kingdom, as I understand would be the case here, a party in a German proceeding would have to first overcome the significant hurdles to obtaining discovery in a German court and then face the additional complexity of obtaining foreign documents.

18.     German courts also treat witnesses very differently than United States courts. To begin with, German procedure does not allow for depositions. Pursuant to Section 128 (1) of the

5

German Code of Civil Procedure, witness statements may only be heard orally by the Judge, who has sole discretion in calling witnesses, i.e. parties may not issue subpoenas.

19.     Further, members of a corporation's board of directors (Vorstandsmitglieder) cannot usually be heard as witnesses in a proceeding to which the Incorporated Company (Aktiengesellschaft) is a party. It is only possible to hear members of the board of directors as representatives of the Incorporated Company as a party. However, it is not possible to force parties (and their legal representatives) to make any statement. What is of even bigger importance is that even if the members of board of directors were to be regarded as potential witnesses, according to section 384 of the German Code of Civil Procedure a witness may refuse to testify on questions, the answer to which would entail the risk of criminal prosecution. And such refusal to testify would not be held against a party by the judge(s) in almost all cases.

20.     In short, were this Action to be converted to a German civil proceeding, deposition discovery would be impossible, document discovery of defendants would be nearly impossible, and representatives of S+B's Board of Directors could not be made to testify in their individual capacities.

**Conclusion**

21.     Based on my experience as a civil litigator in Germany, the statistics cited by Mr. Grigoleit on the average duration of cases in German courts do not correctly reflect the length which would have to be expected if this matter was handled by a German court. Further, though Germany does recognize claims for fraud and fraudulent inducement, the procedural rules in Germany would make any discovery, including document discovery and depositions,

6

unavailable.  Finally, in a German court, it would not be possible to hear members of board of directors as trial witnesses, nor compel their testimony as parties.

Dated: 24 May 2013

By: _____
Sascha Kuhn

7